SUSAN W. AUSMAN, Plaintiff-Appellant, v. ARTHUR ANDERSEN, LLP, Defendant-Appellee.

First District (2nd Division)   No. 1—02—3755

Opinion filed May 18, 2004.—Rehearing denied May 19, 2004.

Lowis & Gellen, of Chicago (Jerry P. Clousson and Kevin J. Clancy, of counsel), for appellant.

Quarles & Brady, L.L.C., of Chicago (John A. McDonald, Leonard S. Shifflett, and Gary R. Clark, of counsel), for appellee.

JUSTICE BURKE delivered the opinion of the court:

Plaintiff Susan Ausman, an attorney, appeals from an order of the circuit court dismissing her retaliatory discharge action against defendant Arthur Andersen, LLP, for failure to state a claim. On appeal, plaintiff contends that our supreme court's decision in *Balla v. Gambro, Inc.*, 145 Ill. 2d 492, 584 N.E.2d 104 (1991), did not bar her cause of action. Alternatively, plaintiff argues that *Balla* should be overruled. For the reason set forth below, we affirm.

## STATEMENT OF FACTS

On January 8, 2001, plaintiff was employed as an attorney in defendant's "Legal Group." After she was summarily discharged on January 31, 2002, plaintiff filed a complaint in the trial court on March 20 based upon grounds of retaliatory discharge and breach of contract.

With respect to plaintiff's retaliatory discharge claim, plaintiff alleged that "Andersen developed independence and ethical standards, policies and processes (collectively, 'independence review') to, among other things, ensure that its partners and employees complied with the letter and spirit of SEC regulations"; this independence review was published in Anderson's "*IES Handbook*"; plaintiff worked on expansions and alliances under the global head of Andersen's Legal Group's expansion and alliance team; plaintiff was responsible for complying with the independence review and for ensuring that proposed business transactions were subjected to the independence review; plaintiff objected to proposed business transactions that had the potential to violate Andersen's independence review and urged her supervisors to subject these business transactions to such review; plaintiff's supervisors, along with other Andersen employees, objected to plaintiff's recommendations and sought quick approval of such transactions without fully subjecting them to an independence review, the supervisors gave their approval, "on information and belief, without disclosing such violation to senior management"; the supervisors' annual appraisals contained various complaints about plaintiff's recommendations; and a supervisor's conclusion that plaintiff should leave Andersen "was a direct result of [her] insistence that proposed business transactions be subject to independence review." Plaintiff concluded that she was terminated "in retaliation for her efforts to ensure compliance with SEC regulations through enforcement of

Andersen's independence review, [and that her termination was] with malicious indifference to federal public policy."[1]

On May 3, defendant filed a motion to dismiss both counts of plaintiff's complaint pursuant to section 2—615 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2—615 (West 2002)). On August 20, the trial court dismissed plaintiff's breach of contract claim without prejudice and dismissed plaintiff's retaliatory discharge claim with prejudice. On September 17, plaintiff filed a motion requesting a Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)) finding that the dismissal of the retaliatory discharge count was a final and appealable order and that there was no just reason for delaying the appeal. The trial court granted plaintiff's motion on December 9. This appeal followed.

## ANALYSIS

Plaintiff first argues that our supreme court's decision in *Balla* did not, contrary to the trial court's interpretation, unequivocally disallow all in-house counsel's claims for retaliatory discharge and that she adequately pleaded the requirements of her claim. Plaintiff further argues that she should have been allowed to bring her action because the public interest of having public accounting firms adhere to the Security and Exchange Commission's (SEC) rules on "Auditor Independence" was not adequately safeguarded by the Illinois Rules of Professional Conduct (Rules of Professional Conduct). Plaintiff also contends that the Rules of Professional Conduct did not adequately safeguard this public interest because they did not allow her to disclose the potential violations in the instant case. Alternatively, plaintiff cites other state supreme courts' decisions that have criticized the *Balla* court's rationale and argues that *Balla* should be overturned.

Defendant contends that *Balla* unequivocally prohibits any Illinois in-house attorney from bringing a retaliatory discharge action against his or her employer. Defendant argues that plaintiff is merely trying to find a "loophole" in *Balla* by asserting that the public interest is unprotected by the Rules of Professional Conduct. Defendant contends that plaintiff's "loophole" cannot be reconciled with this court's holding in *Herbster v. North American Co. for Life & Health Insurance*, 150 Ill. App. 3d 21, 501 N.E.2d 343 (1986), because the court's holding in *Herbster* "was a categorical prohibition of the retaliatory discharge cause of action for any Illinois attorney, based solely on the harm this tort would do to attorney/client relations and the public interest." In the alternative, defendant argues that plaintiff failed to show that she

---

[1]The nature of plaintiff's breach of contract claim is not recited here because plaintiff is not appealing the dismissal of that claim.

met the requirements of a retaliatory discharge cause of action because the claim requires that the discharge violate "a clear mandate of public policy." Defendant maintains that plaintiff has alleged mere disagreement over internal "company rules," which do not rise to the level of a clearly mandated public policy. Lastly, defendant argues that plaintiff cannot ask this court to overrule *Balla* because it is the law of this state.

A section 2—615 motion to dismiss attacks the legal sufficiency of a plaintiff's complaint. *Weatherman v. Gary-Wheaton Bank of Fox Valley*, 186 Ill. 2d 472, 491, 713 N.E.2d 543 (1999). When reviewing the sufficiency of a complaint, the court must accept as true all well-pleaded facts and all reasonable inferences that can be drawn from those facts. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86, 672 N.E.2d 1207 (1996). It is the court's duty to determine, considering the allegations of the complaint in the light most favorable to the plaintiff, whether the allegations are sufficient to state a cause of action upon which relief may be granted. *Board of Directors of Bloomfield Club Recreation Ass'n v. Hoffman Group, Inc.*, 186 Ill. 2d 419, 424, 712 N.E.2d 330 (1999). The complaint should not be dismissed unless it is clear that the plaintiffs could prove no set of facts that would entitle them to relief. *Bryson*, 174 Ill. 2d at 86-87. We review the trial court's decision on a motion to dismiss *de novo*. *Neade v. Portes*, 193 Ill. 2d 433, 439, 739 N.E.2d 496 (2000).

■ As a general rule, "an employer may fire an employee-at-will for any reason or no reason at all." *Jacobson v. Knepper & Moga, P.C.*, 185 Ill. 2d 372, 375-76, 706 N.E.2d 491, 492 (1998). However, our supreme court has recognized a limited and narrow exception, known as retaliatory discharge, to the general rule of at-will employment. *Jacobson*, 185 Ill. 2d at 376. "To establish a cause of action for retaliatory discharge, a plaintiff must demonstrate that (1) he was discharged in retaliation for his activities; and (2) the discharge is in contravention of a clearly mandated public policy." *Jacobson*, 185 Ill. 2d at 376; see also *Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill. 2d 29, 35, 645 N.E.2d 877 (1994); *Balla*, 145 Ill. 2d at 499; *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 134, 421 N.E.2d 876 (1981).

Because plaintiff in the instant case is an attorney licensed to practice law in Illinois, a review of our supreme court's decision in *Balla* is necessary. In *Balla*, the plaintiff, an attorney licenced to practice law in the State of Illinois, was hired as in-house counsel by defendant Gambro, Inc., a distributor of kidney dialysis equipment, to, among other things, be responsible for the legal matters within the company. *Balla*, 145 Ill. 2d at 495. The attorney subsequently assumed duties that had previously been conducted by the manager of regula-

tory affairs, and, as such, the attorney became responsible for " 'ensuring awareness of and compliance with federal, state and local laws and regulations affecting the company's operations and products.' " *Balla*, 145 Ill. 2d at 496.

In July 1985, Gambro's affiliate notified the company that it would be receiving certain defective dialyzers. *Balla*, 145 Ill. 2d at 496. The attorney told Gambro's president to reject the shipment because the dialyzers did not comply with Food and Drug Administration (FDA) regulations. *Balla*, 145 Ill. 2d at 496. The attorney later learned that the president was intending to accept the shipment for distribution despite the attorney's advice, and the attorney confronted the president, warning that "he would do whatever [was] necessary to stop the sale of the dialyzers." *Balla*, 145 Ill. 2d at 496. The attorney was fired shortly thereafter. *Balla*, 145 Ill. 2d at 497. The day following his termination, the attorney reported the shipment to the FDA, which seized the shipment and determined the product to be "adulterated" within the meaning of the federal act at issue in that case. *Balla*, 145 Ill. 2d at 497.

The attorney brought a retaliatory discharge action against his former employer, Gambro, and the trial court dismissed the action on Gambro's motion for summary judgment. *Balla*, 145 Ill. 2d at 494. On appeal, the appellate court reversed the trial court, stating that an attorney is not barred as a matter of law from bringing a retaliatory discharge action (*Balla*, 145 Ill. 2d at 498, citing *Balla v. Gambro, Inc.*, 203 Ill. App. 3d 57, 62, 560 N.E.2d 1043 (1990)), and finding that questions of fact existed regarding the following three-part test in determining whether the attorney had standing to bring his retaliatory discharge action:

> " '(1) whether [the attorney's] discharge resulted from information he learned as a "layman" in a nonlegal position; (2) whether [the attorney] learned the information as a result of the attorney/client relationship, if so, whether the information was privileged, and if it was privileged, whether the privilege was waived; and (3) whether there were any countervailing public policies favoring disclosure of privileged information learned from the attorney/client relationship.' " *Balla*, 145 Ill. 2d at 498, quoting *Balla*, 203 Ill. App. 3d at 63.

Accordingly, the appellate court remanded the case for a determination of the above questions of fact.

On appeal to the supreme court, the *Balla* court agreed with the trial court that the attorney did not have a cause of action against Gambro for retaliatory discharge under the facts of the case (*Balla*, 145 Ill. 2d at 498) based on the following rationale:

"In this case it appears that Gambro discharged [the attorney] in retaliation for his activities, and this discharge was in contravention of a clearly mandated public policy. \*\*\* As we have stated before, '[t]here is no public policy more important or more fundamental than the one favoring the effective protection of the lives and property of citizens.' [Citations.] However, in this case, [the attorney] was not just an employee of Gambro, but also general counsel for Gambro.

\*\*\* [I]n *Herbster v. North American Co. for Life & Health Insurance,* \*\*\* our appellate court held that the plaintiff, an employee and chief legal counsel for the defendant company, did not have a claim for retaliatory discharge against the company due to the presence of the attorney-client relationship. \*\*\*

\* \* \*

We agree with the conclusion reached in *Herbster* that, generally, in-house counsel do not have a claim under the tort of retaliatory discharge. \*\*\* [W]e base our decision as much on the nature and purpose of the tort of retaliatory discharge, as on the effect on the attorney-client relationship that extending the tort would have. In addition, at this time, we caution that our holding is confined by the fact that [the attorney] is and was at all times throughout this controversy an attorney licensed to practice law in the State of Illinois. [The attorney] is and was subject to the Illinois [Rules of Professional Conduct]. \*\*\*

In this case, the public policy to be protected \*\*\* is adequately safeguarded without extending the tort of retaliatory discharge to in-house counsel. [The attorney] was required under [Rule 1.6(b)] to report Gambro's intention to sell the \*\*\* dialyzers. \*\*\*

\* \* \*

\*\*\* [W]e believe that extending the tort of retaliatory discharge to in-house counsel would have an undesirable effect on the attorney-client relationship that exists between these employers and their in-house counsel. \*\*\* [I]f in-house counsel are granted the right to sue their employers for retaliatory discharge, employers might be less willing to be forthright and candid with their in-house counsel. \*\*\*

\*\*\* [I]f in-house counsel are granted a right to sue their employers in tort for retaliatory discharge, employers might \*\*\* limit their communication with their in-house counsel. \*\*\*

If extending the tort of retaliatory discharge might have a chilling effect on the communications between the employer/client and the in-house counsel, we believe that it is more wise to refrain from doing so.

Our decision not to extend the tort of retaliatory discharge to in-house counsel also is based on other ethical considerations. Under

the Rules of Professional Conduct, [the attorney] was required to withdraw from representing Gambro if continued representation would result in the violation of the Rules of Professional Conduct \*\*\*. [W]e refuse to allow in-house counsel to sue their employer/client for damages because they obeyed their ethical obligations. \*\*\*

\*\*\* [I]f we were to grant the in-house counsel the right to sue the client for retaliatory discharge, we would be shifting the burden and costs of obeying the Rules of Professional Conduct from the attorney to the employer/client. \*\*\* This, we believe, is impermissible \*\*\*." *Balla*, 145 Ill. 2d at 498-505.

■ In the case at bar, we first note that it is doubtful that plaintiff, regardless of her status as an attorney, has sufficiently shown that her discharge was in contravention of a clearly mandated public policy. Although plaintiff states in her brief that the public policy at issue here is "the public interest of having [d]efendant and other similar public accounting firms adhere to the SEC's Rules on Auditor Independence," a review of plaintiff's complaint reveals only instances where plaintiff was merely in disagreement over her employer's adherence to its own independence review. It is doubtful that this disagreement would rise to the level of a clearly mandated public policy. See *Palmateer*, 85 Ill. 2d at 130 (stating that, "[a]lthough there is no precise line of demarcation dividing matters that are the subject of public policies from matters purely personal, \*\*\* a matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed," and noting that public policy is to be "found in the State's constitution and statutes and, when they are silent, in its judicial decisions"). However, we need not consider the issue because we hold that, regardless of whether plaintiff sufficiently pleaded a claim for retaliatory discharge, our supreme court's decision in *Balla* prohibits plaintiff from bringing her cause of action.

As set forth above, the *Balla* court clearly decided "not to extend the tort of retaliatory discharge to in-house counsel." *Balla*, 145 Ill. 2d at 504. The *Balla* court confined its holding by the fact that the attorney in that case "was at all times throughout [the] controversy an attorney licensed to practice law in the State of Illinois." *Balla*, 145 Ill. 2d at 501. In the instant case, plaintiff is such an attorney. We believe that if we granted plaintiff the right to sue her former employer, our decision would have "a chilling effect on the communications between the employer/client and the in-house counsel." *Balla*, 145 Ill. 2d at 504. *Balla* clearly prohibits such an effect.

Plaintiff's alternative argument that *Balla* should be overruled also fails. It is well settled that this court must follow the law as

declared by our supreme court. See *Labor Relations Board v. Chicago Transit Authority*, 341 Ill. App. 3d 751, 758, 793 N.E.2d 730, 735 (2003) ("After the supreme court has declared the law with respect to an issue, [the appellate] court must follow that law because only the supreme court has authority to overrule or modify its decisions"); *Chicago Journeymen Plumbers' Local Union 130 v. Department of Public Health*, 327 Ill. App. 3d 192, 201, 761 N.E.2d 1227, 1235 (2001) (noting that "the appellate court has no authority to overrule or modify a supreme court opinion").

## CONCLUSION

For the reasons stated, the order of the circuit court dismissing plaintiff's complaint is affirmed.

Affirmed.

WOLFSON, P.J., and GARCIA, J., concur.